**NOT FOR PUBLICATION**

UNITED STATES DISTRICT COURT
DISTRICT OF NEW JERSEY

| | |
|---|---|
| YANDDIRY YANETH CONTRERAS MALDONADO, *Plaintiff*, v. ALEXANDER CABEZAS *et al.*, *Respondents*. | Civil Action No. 25-13004 **OPINION** October 23, 2025 |

**SEMPER**, District Judge.

**THIS MATTER** comes before the Court is Petitioner Yanddiry Yaneth Contreras Maldonado's ("Petitioner") Amended Petition for a Writ of Habeas Corpus pursuant to 28 U.S.C. § 2241, in which she challenges the lawfulness of her immigration detention. (ECF 18, "Amended Petition" or "Am. Pet.") The Amended Petition raises complex statutory and constitutional questions concerning whether Petitioner's custody falls under 8 U.S.C. §§ 1225(b)(2) or 1226(a). (*Id.*) Respondents filed a response to the Amended Petition on September 2, 2025. (ECF 26, "Response".) Petitioner filed a reply on September 10, 2025. (ECF 29, "Reply".) The Court held a hearing on October 9, 2025, and reserved ruling on the ultimate merits of the habeas petition. (ECF 30-35.) Pending final disposition, the Court enjoined the government from effectuating Petitioner's removal from the United States. (ECF 35.) For the reasons stated below, the Court **GRANTS** Petitioner's Amended Petition and directs Respondents to release Petitioner from immigration detention within 24 hours. Respondents are further enjoined from detaining Petitioner again under 8 U.S.C. § 1225(b)(2).

I.  **FACTUAL BACKGROUND AND PROCEDURAL HISTORY**

Petitioner is a 23-year-old citizen of Honduras who entered the United States in June 2019 at age seventeen, fleeing persecution. (Am. Pet. ¶¶ 1, 20-22, 29.) A Notice of Custody Determination issued by the Department of Homeland Security ("DHS") on July 9, 2019 stated that Petitioner was detained pursuant to 8 U.S.C. § 1226. (*Id.* ¶ 24 & Ex. 7.) Because Petitioner was under 18 when she entered the United States, she was classified as an unaccompanied child ("UAC"), which border patrol agents acknowledged. (Am. Pet. ¶ 25)

Because Petitioner was considered a UAC, she was released to her aunt's care in New Jersey, where she attended high school. (*Id.* ¶¶ 26-27.) She later applied for asylum and Special Immigrant Juvenile Status ("SIJS").[1] (*Id.* ¶¶ 28-29, 36-40 & Exs. 5, 14.) United States Citizenship and Immigration Services ("USCIS") granted her SIJS petition and deferred action on November 15, 2023, protecting her from removal until November 2027.[2] (*Id.* ¶ 40 & Ex. 14.) ICE records indicate that since entering the country, Petitioner has been arrested twice on criminal charges of simple assault and driving without a license. (Response at 7 (citing ECF 10-1, at 2)). On both occasions, Plaintiff failed to appear for a subsequent court appearance, resulting in the issuance of a bench warrant. (Response at 7.) Petitioner maintains that despite these encounters with law enforcement, she has never been convicted of a crime. (Am. Pet. ¶ 40, Exs. 15-17.)

On July 8, 2025, ICE arrested Petitioner at her asylum interview in Newark and detained her in Elizabeth, New Jersey. (*Id.* ¶¶ 3-4, 13, 50-54.) On July 13, 2025, Petitioner was transferred to the El Paso Enhanced Hardened Facility in El Paso, Texas. (*Id.* ¶ 66.) Petitioner was transferred

---

[1] SIJS is a form of humanitarian relief for individuals under 21 years of age who have been abandoned, abused, or neglected by one or both parents. 8 U.S.C. §§ 1101(a)(27)(J), 1255(a), (h).
[2] USCIS recently revised its policy regarding deferred action for SIJS recipients. (Response at 5.) Under current policy, USCIS may terminate previously granted deferred action on a case-by-case basis. (*Id.* at 5-6.)

again on July 27, 2025 to the Otero County Processing Center in Otero County, New Mexico. (*Id.* ¶ 73.)

On August 6, 2025, the immigration court held a master calendar hearing in Petitioner's case (*Id.* ¶ 82.) At the hearing, Immigration Judge ("IJ") Brock E. Taylor noted that Petitioner was detained pursuant to 8 U.S.C. § 1225(b). (*Id.* ¶ 83 & Ex. 1 ¶ 43.) The IJ also took jurisdiction over Petitioner's asylum application. (*Id.* ¶ 84.) On August 8, 2025, Petitioner's counsel filed a motion for bond on Petitioner's behalf. (*Id.* ¶ 85 & Ex. 28.) The IJ denied the motion in part because he lacked jurisdiction to consider releasing Petitioner since Petitioner had entered without inspection and was mandatorily detained under § 1225(b). (*Id.* ¶ 85; *see also* Response at 8.)

The IJ, however, subsequently held a bond hearing on August 14, 2025. (Am. Pet. ¶ 86.) At this hearing, the ICE attorney stated that the statutory basis for Petitioner's detention was § 1226 and, therefore, Petitioner was bond eligible. (*Id.*) At the August 14, 2025 hearing, the IJ denied Petitioner's bond on the grounds that she failed to meet her burden of showing that she was not a flight risk or danger to the community. (*Id.* ¶ 87 & Ex. 1 ¶¶ 45-47; ECF 29-2, Reply Ex. 2; ECF 26-2, Response Ex. 2.)

Petitioner filed her Original Petition for Writ of Habeas Corpus on July 9, 2025, one day after ICE detained her in Newark, New Jersey. (ECF 1.) On the same day, the Court issued an Order to Show Cause directing Respondents to explain the basis for Petitioner's detention. (ECF 3.) Following her transfers to ICE facilities in Texas and New Mexico, Petitioner filed an Amended Petition on August 18, 2025. (ECF 18.) Respondents filed a response on September 2, 2025. (ECF 26.) Petitioner filed a reply on September 10, 2025. (ECF 29.) On October 8, 2025, the Court heard argument from both parties and reserved ruling on the habeas petition. (ECF 34.) The Court subsequently entered an interim order enjoining Petitioner's removal from the United States

3

pending its decision. (ECF 35.) On October 22, 2025, Petitioner filed a notice informing the Court of the status of Petitioner's immigration proceedings. (ECF 36.)

## II. LEGAL STANDARD

The Constitution guarantees that the writ of habeas corpus is available to every individual detained within the United States. *Hamdi v. Rumsfeld*, 542 U.S. 507, 525 (2004) (citing U.S. Const. Art. I, § 9, cl. 2). District courts have the power to grant writs of habeas corpus. 28 U.S.C. § 2241(a). A district court may grant habeas relief if the petitioner "is in custody in violation of the laws or treaties of the United States." 28 U.S.C. § 2241(c)(3). A district court's authority includes jurisdiction to hear habeas challenges to immigration-related detention. *Zadvydas v. Davis*, 533 U.S. 678, 687 (2001). The burden is on Petitioner to show that she is in custody in violation of the Constitution or federal law. 28 U.S.C. § 2241(c)(3); *Walker v. Johnston*, 312 U.S. 275, 286 (1941). Jurisdiction lies in the district of initial custody and is unaffected by subsequent transfers. *Anariba v. Dir. Hudson Cnty. Corr. Ctr.*, 17 F.4th 434, 445-46 (3d Cir. 2021); *Rumsfeld v. Padilla*, 542 U.S. 426, 441 (2004).

## III. DISCUSSION

Petitioner argues that as a noncitizen whose detention is properly governed by § 1226(a), she should have been afforded a pre-detention individualized determination concerning the bases for depriving her of her liberty, and the government's failure to conduct such an individualized determination mandates her immediate release. (Am. Pet. ¶ 8.) She further argues that Respondents have violated her due process right to a meaningful post-deprivation review of her custody status (*Id.* ¶¶ 9-11; Reply at 9-11.) Finally, she alleges that Respondents violated her First Amendment rights because ICE transferred her to a facility outside of New Jersey and interfered with her access to counsel, retaliating against her for filing her original habeas petition. (Am. Pet. ¶ 12; Reply at

14.) Petitioner seeks, among other relief, an order directing Respondents to immediately release her from custody under 28 U.S.C. § 2241(c)(3) or, in the alternative, that the Court hold a curative bond hearing. (Am. Pet. at 49-50.)

Respondents, on the other hand, argue that Petitioner's detention is lawful under 8 U.S.C. § 1225(b); according to Respondents, because Petitioner entered the U.S. without inspection or parole, she must be detained under § 1225. (Response at 10-12.) Respondents argue that Petitioner properly received a bond hearing before an IJ and any due process challenges on that basis must be raised through the administrative process of the INA. (*Id.* at 14-17.) Respondents also contest Petitioner's allegations that ICE transferred her in retaliation for filing her habeas petition. (*Id.* at 19.)

The Court starts by addressing the statutory question.

**A. Statutory Classification**

As an initial matter, the Court must first determine whether Petitioner was initially detained pursuant to §§ 1225(b) or 1226(a). If she was detained under the former, her detention is mandatory. Detention under § 1226(a), on the other hand, is pursuant to DHS's discretionary authority. The distinction is critical for Petitioner.

The Immigration and Nationality Act ("INA") provides two principal sources for civil detention of noncitizens in removal proceedings. 8 U.S.C. § 1225(a) applies to "applicants for admission," who are, as relevant here, noncitizens "present in the United States who [have] not been admitted." 8 U.S.C. § 1225(a)(1). Following inspection by an immigration officer, certain applicants for admission are then subject to expedited removal proceedings. *Id.* §§ 1225(a)(3), 1225(b)(1); *Dep't of Homeland Sec. v. Thuraissigiam*, 591 U.S. 103, 108-09 (2020). However, § 1225(b)(2) provides that "in the case of an alien who is an applicant for admission, if the examining

5

immigration officer determines that an alien seeking admission is not clearly and beyond a doubt entitled to be admitted, the alien shall be detained under section 1229a of this title." 8 U.S.C. § 1225(b)(2)(A). A noncitizen detained under § 1225(b)(2) may be released only if paroled for "urgent humanitarian reasons or significant public benefit" pursuant to 8 U.S.C. § 1182(d)(5)(A), exceptions not alleged here. *Jennings v. Rodriguez*, 583 U.S. 281, 300 (2018).

Next, § 1226(a) provides that, for a noncitizen who is "arrested and detained" "[o]n a warrant issued by the Attorney General," the Attorney General (1) "may continue to detain the arrested alien," (2) "may release the alien on bond of at least $1,500 . . . ." or (3) "may release the alien on . . . conditional parole." 8 U.S.C. §§ 1226(a)(1)-(2). § 1226(a), therefore, "establishes a discretionary detention framework." *Gomes v. Hyde*, No. 25-11571, 2025 WL 1869299, at *1 (D. Mass. July 7, 2025). The arresting immigration officer makes an initial custody determination, but noncitizens have the right to request a custody redetermination hearing before an Immigration Judge. *See* 8 C.F.R. §§ 1236.1(c)(8), (d)(1). As with § 1225, there are some limited exceptions under § 1226(c) requiring "detention for non-citizens who meet certain criminal and inadmissibility criteria" which are not applicable here.

Historically, DHS has interpreted § 1226(a) as applicable to individuals present without admission but apprehended inland after unlawful entry. (Response at 10-12.) Now, Respondents interpret § 1225 to apply to noncitizens who entered the United States without inspection, no matter how long they have resided in the United States. (*See id.* at 10-11.) *See also Zumba v. Bondi*, No. 25-14626, 2025 WL 2753496, at *4 (D.N.J. Sept. 26, 2025) (describing Respondents' change in statutory interpretation).

The Court joins other federal district courts, including in this district, that have recently interpreted "the plain text of Sections 1225 and 1226, together with the structure of the larger

6

statutory scheme, [to] indicate[ ] that Section 1225(b)(2) does not apply to noncitizens who are arrested on a warrant issued by the Attorney General while residing in the United States." *Lopez Benitez v. Francis*, No. 25-5937, 2025 WL 2371588, at *5 (S.D.N.Y. Aug. 13, 2025) (citing *Gomes*, 2025 WL 1869299, at *7; *Martinez v. Hyde*, No. 25-11613, 2025 WL 2084238, at *2 (D. Mass. July 24, 2025)); *see also, e.g.*, *Zumba*, 2025 WL 2753496, at *8; *Singh v. Lyons et al.*, No. 25-01606, 2025 WL 2932635, at *2 (E.D. Va. Oct. 14, 2025); *Chavez v. Kaiser, et al.*, No. 25-06984, 2025 WL 2909526, at *5 (N.D. Cal. Oct. 9, 2025) (collecting cases); *Escobar v. Hyde et al.*, 2025 WL 2823324, at *3 (D. Mass. Oct. 3, 2025); *Quispe v. Crawford, et al.*, No. 25-1471, 2025 WL 2783799, at *4-6 (E.D. Va. Sept. 29, 2025); *J.U. v. Maldonado*, No. 25-04836, 2025 WL 2772765, at *10 (E.D.N.Y. Sept. 29, 2025); *Vazquez v. Feeley*, No. 25-01542, 2025 WL 2676082, at *11-16 (D. Nev. Sept. 17, 2025).

Here, Petitioner has resided in New Jersey for six years, was released to family under Office of Refugee Resettlement supervision in August 2019, and pursued lawful humanitarian relief while in the United States. (Am. Pet. ¶¶ 26-28.) It is uncontested that Petitioner was present in the United States when she was detained on July 8, 2025, not at the threshold of entry. Accordingly, Respondents' invocation of § 1225(b) as applied to Petitioner is inconsistent the statutory framework distinguishing between entry-based and interior detention authority. *See Zumba*, 2025 WL 2753496, at *8. Because Petitioner resided in the United States when detained on July 8, 2025, § 1226, not § 1225, is applicable to Petitioner.

Moreover, the Court finds § 1226, not § 1225, is applicable to Petitioner because Respondents have previously treated Petitioner as subject to § 1226(a), not § 1225(b). When Border patrol agents arrested Petitioner the day after she entered the United States in July 2019, DHS issued a Notice of Custody Determination stating that "[p]ursuant to the authority contained

7

in [8 U.S.C. § 1226(a)]," DHS would detain Petitioner pending a final administrative determination in Petitioner's immigration case.³ (Am. Pet. Ex. 7.) Although the July 8, 2025 Notice to Appear alleges Petitioner is removable under 8 U.S.C. § 1182(a)(6)(A)(i) as "an alien present in the United States who has not been admitted or paroled" (*id.* Ex. 20), at Petitioner's bond hearing on August 14, 2025, ICE's attorney stated that Petitioner was eligible for a bond determination under § 1226(a). (Response at 8, 12 n.6.) This Court, like others that have recently considered the applicability of §§ 1225(b)(2) and 1226(a) to detained noncitizens present in the United States, relies on DHS's prior classification of Petitioner to support its conclusion that Petitioner was subject to discretionary detention under § 1226(a) rather than mandatory detention under § 1225(b)(2). *See, e.g.*, *Zumba*, 2025 WL 2753496, at *9 ("Courts have given great weight to the manner in which DHS treated the petitioner in determining which detention statute applies"); *J.U. v. Maldonado*, No. 25-CV-04836, 2025 WL 2772765, at *6 (E.D.N.Y. Sept. 29, 2025).

For the foregoing reasons, the Court finds that, under the circumstances here, Petitioner is subject to detention only as a matter of discretion under § 1226(a).

### B. Due Process

Petitioner argues that her initial detention under § 1225 violates due process. (Am. Pet. ¶¶ 102-07.) The Fifth Amendment's Due Process Clause prevents the Government from depriving any person of "life, liberty, or property, without due process of law." U.S. Const. amend. V. "[T]he Due Process Clause applies to all 'persons' within the United States, including aliens, whether their presence here is lawful, unlawful, temporary, or permanent." *Zadvydas v. Davis*, 533 U.S. 678, 693 (2001).

---

³ DHS did not formally commence removal proceedings against Petitioner, and because she was an unaccompanied minor, DHS transferred her into the custody of the Office of Refugee Resettlement, an agency within the Department of Health and Human Service, pursuant to the requirements of the Trafficking Victims Protection Reauthorization Act. (Am Pet. ¶ 26; *see also id.* ¶ 26 n.4.)

In the Third Circuit, the three-factor balancing test set forth in *Mathews v. Eldridge* applies to determine what due process requires when faced with immigration detention due process claims. 424 U.S. 319 (1976). These factors are: (i) "the private interest that will be affected by the official action"; (ii) "the risk of an erroneous deprivation of such interest through the procedures used, and the probable value, if any, of additional or substitute procedural safeguards"; and (iii) "the Government's interest, including the function involved and the fiscal and administrative burdens that the additional or substitute procedural requirement would entail." *Gayle v. Warden Monmouth Cnty. Corr. Inst.*, 12 F.4th 321, 331 (3d Cir. 2021) (citing *Mathews*, 424 U.S. at 335).

As to the first factor, freedom from imprisonment is "the most elemental of liberty interests." *Hamdi v. Rumsfeld*, 542 U.S. at 529. Here, the record is uncontested that Respondents detained Petitioner without an individualized determination as to factors such as her flight risk or dangerousness. (*See* Am. Pet. ¶ 107; Response at 10-12 (arguing that Petitioner is detained pursuant to § 1225(b)(2).) Prior to detention pursuant to § 1226(a), immigration officers must allow a noncitizen to "demonstrate to the satisfaction of the officer that . . . release would not pose a danger to property or persons, and that the [noncitizen] is likely to appear for any future proceeding." 8 C.F.R. § 1236.1(c)(8). *See also Lopez*, 2025 WL 2371588, at *10 ("Reading § 1226(a) as requiring an initial detention decision by DHS is the only way to make sense of the broader statutory and regulatory scheme, which provides for an opportunity to appeal a detention decision to an immigration judge who then conducts their own assessment of the noncitizens' flight risk and dangerousness, among other factors.") The Court does not question DHS's discretion in detaining non-citizens pursuant to lawful processes; indeed, it may ultimately exercise this discretion to detain Petitioner again. But here, Petitioner was entitled to more due process than she received when initially detained.

Second, the risk of erroneous deprivation of Petitioner's liberty interest is high because no individualized determination was made contemporaneously with Respondents' decision to detain Petitioner in July 2025. *See J.U.*, 2025 WL 2772765, at *10.

Finally, as to the last factor, "the Government has interests in ensuring the appearance of aliens at future immigration proceedings" and "preventing danger to the community." *Zadvydas*, 533 U.S. at 690 (citation omitted). ICE argued at the August 14, 2025 bond hearing that Petitioner was both a flight risk and a danger to the community. (ECF 29-2 at 11:7-13:6.) While the Court does not question the Government's interest in or determination of the foregoing factors, habeas corpus has historically been "an adaptable remedy" that gives the reviewing court considerable latitude "to correct errors that occurred during the [prior] proceedings" in appropriate circumstances. *Boumediene v. Bush*, 553 U.S. 723, 780, 786 (2008). In this case, Respondents' post-hoc reasoning at the August 14, 2025 bond hearing does not rectify the lack of individualized determination at the time of arrest.

The Court therefore finds that Petitioner's due process rights were violated when she was detained without an individualized determination under § 1226(a) and its implementing regulations.

**B. Bond Hearing**

Respondents argue that even if the Court holds that 8 U.S.C. § 1226(a) governs Petitioner's detention, Petitioner's due process claim fails because she received a constitutionally sufficient bond hearing on August 14, 2025 and her due process challenges must be raised through the administrative process of the INA. (Response at 14-17.)

The parties dispute whether the *Mathews* factors were satisfied at the bond hearing and separately whether the IJ properly placed the burden of proof on Petitioner to establish bond

10

eligibility, rather than placing the burden on the government to show why release was inappropriate. (*Compare* Am. Pet. ¶¶ 109-116, *with* Response at 14-17.) For the reasons set forth below, the Court finds it unnecessary to resolve those issues, but notes that the record indicates that the August 14, 2025 bond hearing afforded Petitioner an opportunity to be heard and represented by counsel. (ECF 26-2, Response Ex. 2.) In addition to the arguments made at the August 14, 2025 hearing, on August 8, 2025, Petitioner's counsel submitted a fulsome brief to the IJ in support of Petitioner's request for a custody and bond redetermination hearing, which included numerous exhibits supporting her release on bond. (ECF 18-28, Am. Pet. Ex. 28.)

Respondents' argument that Petitioner must exhaust her administrative remedies for release with the Board of Immigration Appeals ("BIA") before raising them with the Court is, however, unavailing. (*See* Response at 15 (citing 8 C.F.R. §§ 236.1(d)(3), 1236.1(d)(3).) The Third Circuit excuses exhaustion where "administrative remedies would be futile, if the actions of the agency clearly and unambiguously violate statutory or constitutional rights, or if the administrative procedure is clearly shown to be inadequate to prevent irreparable injury." *Lyons v. U.S. Marshals*, 840 F.2d 202, 205 (3d Cir. 1988) (citation omitted); *see also Woodall v. Fed. Bureau of Prisons*, No. 05-1542, 2005 WL 1705777, at *5-6 (D.N.J. July 20, 2005), *aff'd*, 432 F.3d 235 (3d Cir. 2005) (excusing administrative exhaustion in case brought pursuant to 28 U.S.C. § 2241).

Petitioner's August 14, 2025 bond hearing was a custody re-determination pursuant to § 1226. *See* 8 C.F.R. § 236.1(d)(1)) ("After an initial custody determination by the district director, including the setting of a bond, the respondent may, at any time before an order under 8 CFR part 240 becomes final, request amelioration of the conditions under which he or she may be released."). There is no doubt that Petitioner was not afforded an individualized assessment before

11

she was detained; as such, the BIA cannot provide relief through Petitioner's appeal of the IJ's August 14, 2025 decision on bond. *Abdulla v. Att'y Gen. of United States*, No. 19-1167, 2025 WL 2460506, at *5 (3d Cir. Aug. 27, 2025) (citing *Calderon-Rosas v. Att'y Gen.*, 957 F.3d 378, 384 (3d Cir. 2020)) ("Exhaustion is not required for 'colorable' due process claims that could not have been presented to the BIA in the first instance.")

## IV.  CONCLUSION

For the reasons set forth above, Petitioner's mandatory detention under § 1225(b)(2) violates the Due Process Clause of the Fifth Amendment. The Court grants the writ of habeas corpus (ECF 18) and orders Respondents to release Petitioner from detention within 24 hours. *See Zumba*, 2025 WL 2753496, at *10 (quoting *Boumediene*, 553 at 779) ("A habeas court has 'the power to order the conditional release of an individual unlawfully detained—though release need not be the exclusive remedy….'") Following Petitioner's release, Respondents are permanently enjoined from rearresting or otherwise detaining Petitioner under § 1225(b)(2). An appropriate order follows.

*/s/ Jamel K. Semper*
**HON. JAMEL K. SEMPER**
**United States District Judge**

Orig:     Clerk
cc:       James B. Clark, U.S.M.J.
          Parties