**NOT FOR PUBLICATION**

**UNITED STATES DISTRICT COURT**
**DISTRICT OF NEW JERSEY**

| | |
|---|---|
| YANDDIRY YANETH CONTRERAS MALDONADO,<br><br>*Petitioner*,<br><br>v.<br><br>ALEXANDER CABEZAS *et al.*,<br><br>*Respondents*. | Civil Action No. 25-13004<br><br>**OPINION**<br><br>September 29, 2026 |

**THIS MATTER** comes before the Court on Petitioner Yanddiry Yaneth Contreras Maldonado's ("Petitioner") Motion for Attorney's Fees and Costs Pursuant to the Equal Access to Justice Act ("EAJA"), 28 U.S.C. § 2412(d) ("Motion") (ECF No. 40). Respondents Pamela Jo Bondi, Alexander Cabezas, and Kristi Noem ("Respondents") have filed an opposition to the Motion (ECF No. 50) and Petitioner has filed a Reply (ECF No. 52). The Court has considered the parties' submissions and decides the Motion without oral argument pursuant to Federal Rule of Civil Procedure 78(b) and Local Civil Rule 78.1(b). For the reasons set forth below, Petitioner's Motion is **DENIED**.

## I. BACKGROUND

On July 8, 2025, Immigration and Customs Enforcement ("ICE") detained Petitioner, a citizen of Honduras who had entered the United States in 2019 and had been residing in the United States for several years. (*See* ECF No. 1 ¶¶ 3–26.) The following day, Petitioner filed a Petition for a Writ of Habeas Corpus pursuant to 28 U.S.C. § 2241, challenging the lawfulness of her

detention. (*Id.*) The Court issued an Order to Show Cause directing Respondents to explain why habeas relief should not be granted. (ECF No. 3.)

Respondents thereafter maintained that Petitioner was subject to mandatory detention under 8 U.S.C. § 1225(b)(2), rather than discretionary detention under 8 U.S.C. § 1226(a). (*See* ECF Nos. 10, 26.) Petitioner subsequently amended her Petition (ECF No. 18), and the parties fully briefed the statutory and constitutional issues presented. The Court held a hearing on October 9, 2025, and reserved decision. (ECF No. 34.)

On October 23, 2025, the Court granted the Amended Petition. (ECF No. 37.) The Court concluded that, under the circumstances presented, Petitioner's detention was governed by § 1226(a), rather than § 1225(b)(2), and that Respondents had violated Petitioner's due process rights by detaining her without an individualized determination at the time of her arrest. (*Id.*) The Court ordered Respondents to release Petitioner within twenty-four hours and permanently enjoined Respondents from re-arresting or otherwise detaining Petitioner under § 1225(b)(2). (*Id.*) The Clerk subsequently closed the case. (ECF No. 38.)

On January 21, 2026, Petitioner moved for an award of $105,633.26 in attorney's fees and costs under the EAJA. (ECF Nos. 40; 40-1 at 8.) Respondents oppose the Motion principally on the ground that their position was substantially justified. (ECF No. 50.) Petitioner replies that Respondents' interpretation of § 1225(b)(2) was contrary to established law and that the Court's ultimate ruling demonstrates that Respondents' position was not substantially justified. (ECF No. 52.)

## II. LEGAL STANDARD

The EAJA provides that a court shall award a prevailing party fees and other expenses incurred in a civil action brought by or against the United States unless "the court finds that the

position of the United States was substantially justified or that special circumstances make an award unjust." 28 U.S.C. § 2412(d)(1)(A).

The Third Circuit has held that habeas challenges to immigration detention brought under 28 U.S.C. § 2241 constitute "civil actions" within the meaning of the EAJA. *Michelin v. Warden Moshannon Valley Corr. Ctr.*, 169 F.4th 418, 425, 432 (3d Cir. 2026). The Court therefore agrees with the parties that EAJA fees are available in an appropriate immigration-detention habeas proceeding.

The Court further agrees that Petitioner qualifies as a prevailing party. The Court granted her Amended Petition and ordered her release from detention. (*See* ECF Nos. 37, 38.) The remaining question is whether Respondents have carried their burden of demonstrating that their position was substantially justified.

"The Government bears the burden of proving its position was justified." *Michelin*, 169 F.4th at 433. Substantial justification means that the Government's position was "justified to a degree that could satisfy a reasonable person." *Id.*; *see also Pierce v. Underwood*, 487 U.S. 552, 565 (1988). Thus, the Government's position is substantially justified when it has "a reasonable basis in both law and fact." *Hanover Potato Prods., Inc. v. Shalala*, 989 F.2d 123, 128 (3d Cir. 1993).

To satisfy this standard, the Government must demonstrate "(1) a reasonable basis in truth for the facts alleged; (2) a reasonable basis in law for the theory it propounded; and (3) a reasonable connection between the facts alleged and the legal theory advanced." *Cruz v. Comm'r of Soc. Sec.*, 630 F.3d 321, 324 (3d Cir. 2010) (quoting *Morgan v. Perry*, 142 F.3d 670, 684 (3d Cir. 1998)). In immigration cases, the Court considers both the Government's underlying conduct and its position during the ensuing litigation. *See Michelin*, 169 F.4th at 433; *Johnson v. Gonzales*, 416

F.3d 205, 210 (3d Cir. 2005).

Importantly, a court "[cannot] assume that the government's position was not substantially justified simply because the government lost." *Michelin*, 169 F.4th at 433 (quoting *Williams v. Astrue*, 600 F.3d 299, 302 (3d Cir. 2009)). The substantial justification inquiry is therefore distinct from the merits inquiry. A position may ultimately be rejected by the Court and nevertheless have been substantially justified for purposes of the EAJA. *See Kiareldeen v. Ashcroft*, 273 F.3d 542, 547–48 (3d Cir. 2001).

## III. DISCUSSION

Petitioner principally argues that Respondents' position was not substantially justified because the Court ultimately concluded that § 1225(b)(2) did not authorize her mandatory detention. (ECF No. 40-1 at 15–21.) She emphasizes that the Government had historically treated similarly situated noncitizens as subject to § 1226(a), that Respondents adopted a new interpretation of the detention statutes when Petitioner was arrested, and that numerous courts rejected the Government's interpretation. (*Id.*) Petitioner also points to the fact that the Court concluded that Respondents had previously treated Petitioner herself as subject to § 1226(a). (*Id.* at 21.) These considerations informed the Court's merits determination. (*See* ECF No. 37.) They do not, however, establish that Respondents' position lacked a reasonable basis for purposes of the EAJA.

### A. Respondents' position presented a substantial and unsettled question of statutory interpretation.

The dispositive issue in the underlying habeas proceeding concerned the proper interaction between 8 U.S.C. §§ 1225(b)(2) and 1226(a), specifically whether § 1225(b)(2) authorizes mandatory detention of a noncitizen who is physically present in the interior of the United States but has not been admitted.

The statutory question was not frivolous or foreclosed by binding precedent. Section 1225(b)(2)(A) provides that, "[i]n the case of an alien who is an applicant for admission," when the examining immigration officer determines that the noncitizen seeking admission is not clearly and beyond a doubt entitled to admission, "the alien shall be detained" pending removal proceedings. 8 U.S.C. § 1225(b)(2)(A). Section 1225(a)(1), in turn, defines an "applicant for admission" to include a noncitizen present in the United States who has not been admitted. *Id.* § 1225(a)(1).

The Supreme Court's decision in *Jennings v. Rodriguez*, 583 U.S. 281 (2018), further recognized that § 1225(b) establishes a mandatory detention regime for covered applicants for admission. Although *Jennings* did not resolve the precise question presented here—whether § 1225(b)(2) reaches noncitizens who entered the United States without inspection and were later apprehended in the interior—it supplied substantial authority relevant to the Government's statutory position. *See generally* 583 U.S. 281.

At the time of Petitioner's detention and during much of the ensuing litigation, moreover, there was no controlling decision from the Supreme Court or Third Circuit foreclosing Respondents' interpretation of § 1225(b)(2). The absence of controlling contrary precedent is significant to the EAJA inquiry.

The legal landscape subsequently became even more unsettled. On September 5, 2025, the Board of Immigration Appeals ("BIA") issued *Matter of Yajure Hurtado*, 29 I. & N. Dec. 216 (BIA 2025), holding that immigration judges lack authority to conduct bond hearings for noncitizens who are present in the United States without admission and are detained under § 1225(b)(2). The BIA therefore adopted the same basic statutory interpretation advanced by Respondents in this case. The decision was precedential within the immigration adjudicatory

system.

The existence of contrary district court decisions does not itself establish that the Government's position was unreasonable. The Third Circuit has expressly recognized that "it is not unjustified for [the Government] to assert a position in one court merely because that position has been rejected in another." *Hanover Potato*, 989 F.2d at 131. The relevant inquiry is whether the Government had a reasonable basis for its position, not whether that position represented the prevailing judicial view.

Indeed, the subsequent development of the law confirms rather than undermines the reasonableness of Respondents' position. In 2026, the Fifth and Eighth Circuits adopted interpretations supporting the Government's position that § 1225(b)(2) may mandate detention of unadmitted noncitizens apprehended inside the United States. *See Buenrostro-Mendez v. Bondi*, 166 F.4th 494 (5th Cir. 2026); *Avila v. Bondi*, 170 F.4th 1128 (8th Cir. 2026). Other courts of appeals have reached contrary conclusions, resulting in a genuine and developing circuit split. *See*, *e.g.*, *Barbosa da Cunha v. Freden*, 175 F.4th 61 (2d Cir. 2026); *Lopez-Campos v. Raycraft*, 175 F.4th 713 (6th Cir. 2026). The decision of the Third Circuit likewise acknowledges the split, which supports a finding of substantial justification. *See Buele Morocho v. Warden Philadelphia FDC*, No. 26-1150, 2026 WL 2546223, at *11 n.9 (3d Cir. Aug. 28, 2026) (Mascott, J., dissenting).

Accordingly, although this Court rejected Respondents' statutory interpretation as applied to Petitioner, the Court cannot conclude that the interpretation was so lacking in legal support that no reasonable person could have advanced it.

**B. Respondents' position concerning Petitioner's particular detention also had a reasonable factual basis.**

Petitioner emphasizes that DHS had previously treated her as subject to § 1226(a), including when she was detained in 2019, and that an ICE attorney stated at her August 14, 2025

bond hearing that she was eligible for a bond determination under § 1226(a). (*See* ECF No. 37 at 7–8.) Those facts were important to the Court's ultimate determination that § 1226(a), rather than § 1225(b)(2), governed Petitioner's detention. (*See id.*)

But the existence of contrary factual considerations does not render Respondents' position unreasonable. The Government did not dispute that Petitioner had been physically present in the United States for several years. Rather, Respondents advanced a legal theory under which her lack of admission placed her within the statutory category of "applicants for admission" regardless of her physical location. (*See* ECF No. 26 at 16–20.)

The question presented was therefore principally one of statutory classification. Respondents identified facts—Petitioner's lack of admission and her resulting status under § 1225(a)(1)—that provided a factual predicate for the legal theory they advanced. (*See id*. at 12–15.) That theory was ultimately rejected (*see* ECF No. 37), but it was not untethered from the statutory text or the factual record.

Nor does the Court's observation that Respondents had previously classified Petitioner under § 1226(a) establish that Respondents acted unreasonably in adopting a different statutory interpretation in July 2025. The Government expressly represented that its detention policy had changed. (*See* ECF No. 26 at 16–17.) The reasonableness of that change is distinct from whether the Court agreed with the resulting interpretation. The EAJA does not authorize an award of fees merely because the Government changed its legal position and the Court ultimately rejected the new position. *See Kiareldeen*, 273 F.3d at 547–48.

**C. Respondents' litigation position was also substantially justified.**

The Court likewise concludes that Respondents' litigation position was substantially justified.

Respondents did not simply rely upon the proposition that they should prevail because the Government had adopted the interpretation at issue. They defended the interpretation through the statutory text and existing precedent, including *Jennings*. (*See* ECF No. 26.) At the time the operative briefing was completed, the BIA had also issued *Yajure Hurtado*, expressly adopting the Government's interpretation of § 1225(b)(2).

The subsequent appellate authority further confirms that the issue was reasonably disputable. As noted above, the Fifth and Eighth Circuits have since agreed with the Government's interpretation, while other courts of appeals have reached the opposite conclusion. *See Buenrostro-Mendez*, 166 F.4th 494; *Avila*, 170 F.4th 1128. The Third Circuit has since acknowledged the circuit split regarding the statutory question presented here. *See Buele Morocho*, 2026 WL 2546223, at *11 n.9 (Mascott, J., dissenting). The existence of a developing circuit split is not dispositive of the EAJA question, but it is objective evidence that the legal issue is sufficiently unsettled that the Government's position could satisfy a reasonable person. *See Michelin*, 169 F.4th at 433.

The Court recognizes that the merits Opinion in this case concluded that § 1225(b)(2) did not apply to Petitioner and that her detention violated due process. (ECF No. 37.) Nothing in this Opinion alters that conclusion. But the EAJA requires a separate inquiry. "Substantial justification" does not mean that the Government must have been correct; it requires only a reasonable basis in law and fact. *Kiareldeen*, 273 F.3d at 547–48; *Michelin*, 169 F.4th at 433.

This distinction is particularly important here because the Court's merits ruling rested on the particular circumstances surrounding Petitioner's detention, including her lengthy residence in the United States, her prior classification under § 1226(a), and the absence of an individualized custody determination at the time of her arrest. Those considerations justified habeas relief. They

do not, standing alone, establish that Respondents lacked a reasonable basis for litigating the unsettled statutory question presented.

**D. The Court need not reach the parties' arguments concerning special circumstances.**

Because the Court concludes that Respondents' position was substantially justified, the Court need not determine whether "special circumstances" independently make an award unjust under 28 U.S.C. § 2412(d)(1)(A). The existence of either statutory exception is sufficient to defeat an EAJA fee application. *See* § 2412(d)(1)(A).

## IV. CONCLUSION

For the foregoing reasons, the Court concludes that Respondents have established that their position, both in detaining Petitioner under 8 U.S.C. § 1225(b)(2) and in defending that detention during the ensuing habeas litigation, was substantially justified within the meaning of 28 U.S.C. § 2412(d)(1)(A). Accordingly, Petitioner's Motion for Attorney's Fees and Costs Pursuant to the Equal Access to Justice Act (ECF No. 40) is **DENIED**. An appropriate Order accompanies this Opinion.

*/s/ Jamel K. Semper*
**HON. JAMEL K. SEMPER**
**United States District Judge**